Clara J. Shin (Bar No. 214809)
cshin@cov.com
Jeffrey Davidson (Bar No. 248620)
jdavidson@cov.com
Amy S. Heath (Bar No. 312516)
aheath@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street
San Francisco, CA 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Lindsey Barnhart (Bar No. 294995)
lbarnhart@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendant
Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MICHAEL R. RATTAGAN,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Case No.: 3:19-CV-01988-EMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 8, 2019<br>Time:       1:30 PM<br>Location:  Courtroom 5 - 17th Floor<br>Judge:      Hon. Edward M. Chen |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

I.    LEGAL STANDARD ................................................................................................... 3

II.    MR. RATTAGAN'S AMENDED COMPLAINT VIOLATES RULE 11. ...................... 4

    A.    Mr. Rattagan's Factual Allegations Are Demonstrably Untrue ............................. 4

        1.    Mr. Rattagan served as the "legal representative" for the Uber International Entities, not Uber Technologies. .......................................... 4

        2.    Any attorney-client relationship existed between Mr. Rattagan and the Uber International Entities. ........................................................................ 6

    B.    The Unsupported Allegations Render Mr. Rattagan's Claims Untenable. ............. 6

II.    UBER TECHNOLOGIES HAS SATISFIED THE PROCEDURAL REQUIREMENTS OF RULE 11. ................................................................................................................ 7

III.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT AND AWARD MONETARY SANCTIONS. ........................................................................................ 8

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Royal Power Mgmt., Inc.*,
  No. C-11-4822-EMC, 2012 WL 298315 (N.D. Cal. Feb. 1, 2012) ....................................................... 8

*Carter v. Deutsche Bank Nat'l Tr. Co.*,
  No. 16-4163, 2017 WL 4740570 (6th Cir. Aug. 30, 2017) ................................................................. 8

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ........................................................................................................... 3

*Conn v. Borjorquez*,
  967 F.2d 1418 (9th Cir. 1992) ........................................................................................................... 4

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ................................................................................................................ 1, 8

*Gottschalk v. City & Cty. of San Francisco*,
  964 F. Supp. 2d 1147 (N.D. Cal. 2013) ............................................................................................ 8

*H.P.D. Consolidation, Inc. v. Pina*,
  No. 15-cv-05309-EMC, 2017 WL 1046960 (N.D. Cal. Mar. 20, 2017) ............................................ 8

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ............................................................................................................. 7

*Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*,
  20 F.3d 987 (9th Cir. 1994) ............................................................................................................... 2

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) ........................................................................................................... 7

*Song FI, Inc. v. Google, Inc.*,
  No. C 14-5080 CW, 2016 WL 4180214 (N.D. Cal. Aug. 8, 2016) ................................................... 4

*Zee Med. Distrib. Ass'n, Inc. v. Zee Medical, Inc.*,
  23 F. Supp. 2d 1151 (N.D. Cal. 1998) .............................................................................................. 9

**Rules**

Fed. R. Civ. P. 11 .................................................................................................................... *passim*

**Other Authorities**

Mario Eduardo Castro Sammartino, 1 Digest of Commercial Laws of the World § 1:78
  (June 2019) ....................................................................................................................................... 5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Thursday, August 8, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Uber Technologies") will, and hereby does, move for this Court to impose sanctions on Plaintiff and his counsel under Federal Rule of Civil Procedure 11 and the Court's inherent power.  The Amended Complaint is premised on factual contentions that Plaintiff Michael Rattagan and his counsel know to be untrue.  *See* Fed. R. Civ. P. 11(b)(3).  Uber Technologies therefore seeks an order from the Court (1) dismissing the Amended Complaint; and (2) awarding to Uber Technologies the reasonable fees and expenses it incurred in presenting this Motion and the previously filed Motion to Dismiss.  *See* Fed. R. Civ. P. 11(c)(1), (2), (4); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying declaration and exhibits thereto, the documents on file with the Court, and such further evidence and argument as the Court may permit.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On April 12, 2019, *one day* after Uber Technologies filed for its initial public offering, Plaintiff Michael Rattagan, "a citizen of Argentina," sued Uber Technologies, Uber International BV, and Uber International Holding BV for an unspecified amount of damages.  Dkt. 1 ("Compl.") ¶¶ 4-5 & p.21.  According to Mr. Rattagan, he had once been hired to be the Argentine "legal representative" of "certain Uber subsidiaries," *i.e.*, Uber International BV and Uber International Holding BV (collectively, the "Uber International Entities").  *Id.* ¶ 1.  According to Mr. Rattagan, he has suffered damages because "in April 2016—without consulting or even notifying Mr. Rattagan—Uber launched its service in Buenos Aires with the help of different advisors, who[m] Argentine authorities publicly claim either ignored or disregarded the particularities of Argentine law, policies and business practice."  *Id.* ¶ 2.

Four of Mr. Rattagan's five claims pled in the Complaint purported to derive from fiduciary duties and obligations allegedly arising from contractual relationships with the Uber International

Entities, which were the only "shareholders" for whom Mr. Rattagan was the "legal representative." This Court, however, had no subject matter jurisdiction over the asserted claims by Mr. Rattagan, a citizen of Argentina, against those entities, because the Uber International Entities are foreign companies—in the words of the Complaint, they were "formed under the laws of the Netherlands with [their] principal place of business in Amsterdam." *Id.* ¶ 5. Diversity jurisdiction does not encompass a foreign plaintiff, such as Mr. Rattagan, suing foreign defendants, such as the Uber International Entities. *See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994). This is so regardless of whether additional U.S. defendants, such as Uber Technologies, are joined. *Id.*

On May 3, 2019, the three Uber entities notified Mr. Rattagan and his counsel of the fatal jurisdictional defect in his claims and requested that Mr. Rattagan dismiss the Complaint. Rather than dismissing the Complaint as Mr. Rattagan should have done, he filed an Amended Complaint on May 8, 2019 that removed the Uber International Entities but did not add any factual allegations tying the alleged basis for his claims to Uber Technologies, the only remaining defendant. The only amendments Mr. Rattagan made to his original Complaint were to (1) redefine the term "Uber" from "Uber Technologies, Uber International BV, and Uber International Holdings BV," to refer only to "Uber Technologies," and (2) delete his allegation that Uber Technologies "directed and authorized" the "operational decisions" of the Uber International Entities. *See* Declaration of Clara J. Shin in Support of Defendant's Motion for Rule 11 Sanctions ("Shin Decl.") Ex. A.[1]

The effect of this change is that Mr. Rattagan's Amended Complaint now imputes *all* of the allegations previously lodged against the Uber International Entities to Uber Technologies—an entity with which Mr. Rattagan did not have the alleged contractual relationships that form the basis of Mr. Rattagan's claims. The result is that Mr. Rattagan is now advancing factual allegations that are demonstrably untrue. For example, the Amended Complaint alleges that "Uber [Technologies] and Mr. Rattagan agreed that Mr. Rattagan would act as the Shareholders' legal representative in Argentina," Dkt. 15 ("Am. Compl.") ¶ 15; that "Uber [Technologies] retained Mr. Rattagan . . . to

---

[1] Certain portions of the exhibits to the Shin Declaration irrelevant to the instant dispute have been redacted.

1  establish its initial corporate presence in Argentina," *id.* ¶ 2; and that "Uber [Technologies] enlisted
2  Mr. Rattagan to assist in the creation of an Argentine subsidiary," *id.* ¶ 13.  Yet Mr. Rattagan knows that
3  there are no such agreements between him and Uber Technologies, and that these agreements exist only
4  between him and the Uber International Entities.

5        Mr. Rattagan and his counsel should not be permitted to manufacture factual allegations, or sign
6  a pleading that lacks evidentiary support, to invoke this Court's jurisdiction.  *See* Fed. R. Civ. P.
7  11(b)(3).  The demonstrably untrue allegations in the Amended Complaint are a byproduct of
8  Mr. Rattagan's improper attempt to secure a federal forum for a dispute that is actually between an
9  Argentine citizen (Mr. Rattagan) and two Dutch companies (Uber International BV and Uber
10 International Holding BV), exactly the type of dispute between foreign citizens that does not belong in
11 federal court.  On May 14, 2019, Uber Technologies gave written notice that Mr. Rattagan should never
12 have filed the Amended Complaint and that counsel's certification of Mr. Rattagan's false allegations
13 violates Rule 11.  Mr. Rattagan did not provide a substantive response to this May 14, 2019 written
14 notice, so Uber Technologies served a copy of this Motion on June 7, 2019.  Mr. Rattagan failed to
15 correct or dismiss the Amended Complaint within 21 days of service.

16       Uber Technologies brings this Motion and respectfully requests an order from this Court
17 (1) dismissing the Amended Complaint; and (2) awarding Uber Technologies the reasonable fees and
18 expenses incurred in presenting this Motion and its Rule 12(b)(6) Motion to Dismiss, Dkt. 23.

19 **ARGUMENT**

20 **I.   LEGAL STANDARD**

21       "Filing a complaint in federal court is no trifling undertaking.  An attorney's signature on a
22 complaint is tantamount to a warranty that the complaint is well grounded in fact and existing law . . . ."
23 *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks omitted).
24 Specifically, Rule 11 requires an attorney who has "present[ed] to the court a pleading, written motion,
25 or other paper—whether by signing, filing, submitting, or later advocating it" to certify "to the best of
26 the person's knowledge, information, and belief, formed after an inquiry reasonable under the
27 circumstances" that the claims are warranted by existing law and that "the factual contentions have
28

1    evidentiary support." Fed. R. Civ. P. 11(b)(3).  Reasonableness under Rule 11 is judged by an objective
2    standard.  *See Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992).
3           A court "may impose an appropriate sanction on any attorney, law firm, or party" that violates
4    Rule 11(b).  *See* Fed. R. Civ. P. 11(c)(1).  Sanctions may be imposed in the form of nonmonetary
5    directives, penalties, or payment to the movant of the reasonable attorney's fees and other expenses
6    directly resulting from the violation.  *See* Fed. R. Civ. P. 11(c)(4).  Nonmonetary sanctions may include,
7    where appropriate, the striking of allegations that are devoid of evidentiary support.  *See, e.g.*, *Song FI,*
8    *Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 4180214, at *2-5 (N.D. Cal. Aug. 8, 2016) (striking
9    allegations lacking evidentiary support); *see also* Fed. R. Civ. P. 11 advisory committee notes to 1993
10   amendment (listing "striking the offending paper" as a possible nonmonetary sanction under Rule 11).
11   In determining whether monetary sanctions are warranted, courts can consider a wide range of factors,
12   including "[w]hether the improper conduct was willful, or negligent"; "whether it infected the entire
13   pleading, or only one particular count or defense"; "what effect it had on the litigation process in time or
14   expense"; "whether the responsible person is trained in the law"; and "what amount, given the financial
15   resources of the responsible person, is needed to deter that person from repetition in the same case."
16   Fed. R. Civ. P. 11 advisory committee notes to 1993 amendment.

## II.   MR. RATTAGAN'S AMENDED COMPLAINT VIOLATES RULE 11.

### A.   Mr. Rattagan's Factual Allegations Are Demonstrably Untrue.

19          Mr. Rattagan's claims in the Amended Complaint rest on at least two allegations that
20   Mr. Rattagan knows to be untrue: (1) that Uber Technologies "and Mr. Rattagan agreed that
21   Mr. Rattagan would" serve as the "legal representative" for a new Argentine entity, Uber Argentina
22   SRL, Am. Compl. ¶ 15; and (2) the existence of an attorney-client relationship between Mr. Rattagan
23   and Uber Technologies, *see id.* ¶¶ 78, 80, 85, 87, 100.  The documentary evidence establishes that each
24   of these allegations is false.  Fed. R. Civ. P. 11(b)(3).

#### 1.   Mr. Rattagan served as the "legal representative" for the Uber International Entities, not Uber Technologies.

27          Under Argentine law, each foreign shareholder of an Argentine corporate entity must name a
28   local resident to act as its "legal representative" and supply a local address.  *See generally* Mario

1  Eduardo Castro Sammartino, 1 Digest of Commercial Laws of the World § 1:78 (June 2019).  Mr.
2  Rattagan is not and never was a legal representative for Uber Technologies, and Uber Technologies is
3  not and never was a foreign shareholder of an Argentine entity.  Rather, the Uber International Entities
4  contacted, retained, and entered into agreements with Mr. Rattagan to form Uber Argentina.

5  The Amended Complaint is premised on Mr. Rattagan's untrue allegations that Uber
6  Technologies took the actions and entered into the agreements that Mr. Rattagan knows are attributable
7  to the Uber International Entities:

- "Uber [Technologies] and Mr. Rattagan agreed that Mr. Rattagan would" serve as the "legal representative" in Argentina, Am. Compl. ¶ 15;
- "Uber [Technologies] retained Mr. Rattagan . . . to establish its initial corporate presence in Argentina," *id*. ¶ 2;
- "Uber [Technologies] enlisted Mr. Rattagan to assist in the creation of an Argentine Subsidiary," *id.* ¶ 13;
- Mr. Rattagan registered the Uber International Entities as shareholders "on Uber [Technologies'] behalf," *id.* ¶ 14;
- "Uber [Technologies] . . . appointed Mr. Rattagan as the legal representative . . . in Argentina," *id.* ¶¶ 80, 87.

As Mr. Rattagan and his counsel know, each of these allegations is demonstrably untrue: any relationship relevant to Mr. Rattagan's work in Argentina existed between Mr. Rattagan and the Uber International Entities, *not* Uber Technologies.

For example, the Amended Complaint alleges that "[i]n February of 2013, Liesbeth ten Brink—a former classmate from New York University School of Law who worked for Uber [Technologies]—contacted Mr. Rattagan." *Id.* ¶ 12.  But Mr. Rattagan knew Ms. ten Brink to be a resident of the Netherlands and the Legal Director for Europe at *Uber International*, and that Ms. ten Brink contacted him about forming an Argentina entity, Uber Argentina SRL, the two shareholders of which were to be the Uber International Entities.  *See* Shin Decl. Ex. B at 1; Am. Compl. ¶ 4.  Mr. Rattagan addressed legal memoranda to "Liesbeth ten Brink, *Uber International B.V.*," Shin Decl. Ex. C at 3 (emphasis added), and he responded to Ms. ten Brink's overture by stating that he was "delighted" to advise on

"*Uber International's* South American expansion," Shin Decl. Ex. B at 1-2 (emphasis added). Mr. Rattagan erased any doubt about the Uber entity with which he had a relationship when, on April 15, 2016, he provided this written clarification: "For the record, we were not hired by Ryan Black [an employee of Uber Technologies] but by Liesbeth ten Brink, Director Legal—Europe, Uber International B.V. (February 2013)." Shin Decl. Ex. D at 1.

Additional documentation definitively establishes that no relevant legal relationship exists between Uber Technologies and Mr. Rattagan. On May 16, 2013, Mr. Rattagan registered with the Argentine government as the legal representative of Uber International Holding. Shin Decl. Ex. E. And Mr. Rattagan submitted bills addressed to Uber International Holding—not Uber Technologies— for his services as the legal representative. *See* Shin Decl. Ex. F.

Mr. Rattagan never served as the "legal representative" for Uber Technologies, and he knows that each contrary allegation in the Amended Complaint is untrue.

   **2. Any attorney-client relationship existed between Mr. Rattagan and the Uber International Entities.**

Mr. Rattagan's allegation in the Amended Complaint that Uber Technologies had an "attorney/client and contractual relationship with Mr. Rattagan" is similarly untrue. Am. Compl. ¶¶ 80, 87; *see also id.* ¶¶ 78, 85, 100. First, no attorney engagement exists between Mr. Rattagan or his law firm and Uber Technologies. To support his claim of an attorney-client relationship, Mr. Rattagan points only to correspondence between himself and Ms. ten Brink of *Uber International*. That correspondence confirms that Mr. Rattagan's relationship was with the Uber International Entities. Second, Mr. Rattagan addressed his invoices for legal services to Uber International Holding, not Uber Technologies. *See* Shin Decl. Ex. F.

There is no evidence to support Mr. Rattagan's allegations that an attorney-client relationship existed between him or his law firm and Uber Technologies.

 **B. The Unsupported Allegations Render Mr. Rattagan's Claims Untenable.**

Mr. Rattagan's demonstrably untrue allegations do not go to peripheral matters—they form the basis of his case. Four of Mr. Rattagan's five causes of action depend on the existence of a fiduciary or other relationship of trust between Mr. Rattagan and the defendant. As a result, Mr. Rattagan's incorrect

1  allegations regarding the entity with which he had the relevant relationship are necessary to his claims.
2  Count 1 (Breach of Fiduciary Duty) is premised entirely on the purported fiduciary duty Uber
3  Technologies allegedly assumed "[b]y asking Mr. Rattagan to serve as the legal representative of the
4  Shareholders."  *See* Am. Compl. ¶ 73.  But Mr. Rattagan knows that it was the Uber International
5  Entities, not Uber Technologies, that asked him to serve as a legal representative.  *Supra* at 4-6.

6  Count 2 (Deceit) and Count 3 (Fraud) are not based on any allegation of affirmative
7  misrepresentations.  Instead, Mr. Rattagan alleges that "Uber" failed to disclose certain facts.  But there
8  is no generalized duty in the law for one person to disclose information to another.  Instead, such a duty
9  can only exist if the parties are in a particular sort of legal relationship.  *See LiMandri v. Judkins*, 52 Cal.
10 App. 4th 326, 336-37 (1997) (listing types of relationships that give rise to a duty to disclose); *see also*
11 *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1159 n.3 (9th Cir. 2008) (citing *LiMandri*
12 for proposition that there is no duty to disclose in the absence of a transactional relationship between the
13 parties).  Accordingly, the viability of Mr. Rattagan's fraud and deceit claims depend on the existence of
14 an "attorney/client and contractual relationship with Mr. Rattagan," or the "appoint[ment] [of]
15 Mr. Rattagan as . . . legal representative."  *See* Am. Compl. ¶¶ 80, 87.  Assuming for the moment that
16 these alleged relationships could give rise to an affirmative duty to disclose as a general matter, no such
17 relationship ever existed between Mr. Rattagan and Uber Technologies.  *Supra* at 4-6.

18 Count 5 (Negligence) similarly claims a purported duty of care based on an alleged
19 "attorney/client and contractual relationship," and Mr. Rattagan's appointment as legal representative.
20 *See* Am. Compl. ¶ 100.  Again, even if those relationships could give rise to a duty of care, there are no
21 such relationships between Mr. Rattagan and Uber Technologies.

22 **III.   UBER TECHNOLOGIES HAS SATISFIED THE PROCEDURAL REQUIREMENTS OF RULE 11.**
23

24 Pursuant to Rule 11's "safe harbor provision," the party seeking sanctions must serve the
25 sanctions motion on the opposing party at least 21 days before filing the motion, and sanctions may only
26 be sought if the challenged pleading is not withdrawn or corrected within that time period.  *See*
27 *Gottschalk v. City & Cty. of San Francisco*, 964 F. Supp. 2d 1147, 1168 (N.D. Cal. 2013).  Uber
28 Technologies has satisfied those requirements.

1  Uber Technologies notified Mr. Rattagan of his Rule 11 violations on May 3, 2019 and again on
2  May 14, 2019, and then served this Motion on June 7, 2019. Shin Decl. ¶ 8. When Mr. Rattagan's
3  counsel failed to take corrective action within 21 days of that service, Uber Technologies was forced to
4  file this Motion. Fed. R. Civ. P. 11(c)(2).

**IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT AND AWARD MONETARY SANCTIONS.**

Uber Technologies seeks an order from this Court (1) dismissing the Amended Complaint, and (2) awarding Uber Technologies the reasonable fees and expenses incurred in presenting this Motion and its accompanying Motion to Dismiss. *See* Fed. R. Civ. P. 11(c)(1), (2), (4); *Goodyear Tire & Rubber*, 137 S. Ct. at 1184.

The factors listed in the Advisory Committee Notes to Rule 11 weigh in favor of imposing sanctions here. Mr. Rattagan's counsel are experienced practitioners, and Mr. Rattagan himself claims to be an experienced attorney. Mr. Rattagan's counsel signed the Amended Complaint knowing that it contained untrue allegations, given that Uber Technologies informed them of the factual inaccuracies in written correspondence. *See H.P.D. Consolidation, Inc. v. Pina*, No. 15-cv-05309-EMC, 2017 WL 1046960, at *3-4 (N.D. Cal. Mar. 20, 2017) (Chen, J.) (imposing sanctions on plaintiff who filed an amended complaint after being put on notice by the defendant that the initial complaint lacked evidentiary support); *Brown v. Royal Power Mgmt., Inc.*, No. C-11-4822-EMC, 2012 WL 298315, at *3 (N.D. Cal. Feb. 1, 2012) (Chen, J.) (imposing sanctions on plaintiff's counsel when "counsel continued to make . . . factual assertions even when confronted with evidence presented by Defendants that their assertions were wrong").

In addition, Mr. Rattagan's violation of Rule 11 was motivated by an apparent effort to remain in federal court. Mr. Rattagan's allegations were originally lodged against the Uber International Entities, and the decision to drop these foreign entities without changing the substance of the allegations is an effort to secure a federal forum by making knowingly incorrect allegations. That is improper forum shopping and a manipulation of this Court's jurisdiction that should not be countenanced. *See Carter v. Deutsche Bank Nat'l Tr. Co.*, No. 16-4163, 2017 WL 4740570, at *4 (6th Cir. Aug. 30, 2017) (affirming dismissal of action when plaintiff's "own actions—refiling his state-law claims but omitting Chase as a

named defendant to create diversity jurisdiction—indicate forum shopping"); *Zee Med. Distrib. Ass'n , Inc. v. Zee Medical, Inc.*, 23 F. Supp. 2d 1151, 1158-59 (N.D. Cal. 1998) (explaining that dropping nondiverse parties to keep "ordinary business litigation" in federal court violated the "well settled principle behind" 28 U.S.C. § 1359, which seeks to prevent "parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts") (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992)).

Finally, the untrue factual allegations "infect[] the entire pleading," Rule 11 advisory committee notes to 1993 amendment, given that the viability of Mr. Rattagan's claims *depend* on the existence of the alleged contractual and other legal fiduciary relationships.  *Supra* at 6-7.  As a result, dismissal is warranted and no lesser sanction can remedy the wrong.

Fees are also warranted.  Mr. Rattagan's refusal to withdraw the Amended Complaint, in the face of undisputed evidence that it is based on untrue allegations of fact, unnecessarily protracted this litigation and required Uber Technologies and this Court to expend the time and resources necessary to address this Motion and the accompanying Rule 12(b)(6) Motion to Dismiss.  Uber Technologies will submit a calculation of fees at the time it files its reply brief in support of this Motion.

## CONCLUSION

For the foregoing reasons, Uber Technologies respectfully requests that the Court dismiss the Amended Complaint and award costs and fees.

| | |
|---|---|
| Dated: July 2, 2019 | Respectfully submitted, |
| | /s/ Clara J. Shin |
| | Clara J. Shin |
| | Jeffrey M. Davidson |
| | Amy S. Heath |
| | COVINGTON & BURLING LLP |
| | 415 Mission Street, Suite 5400 |
| | San Francisco, CA 94105 |
| | E-mail: cshin@cov.com |
| | E-mail: jdavidson@cov.com |
| | E-mail: aheath@cov.com |
| | |
| | Lindsey Barnhart |
| | COVINGTON & BURLING LLP |
| | 3000 El Camino Real |
| | 5 Palo Alto Square, 10th Floor |
| | Palo Alto, CA 94306 |
| | Email: lbarnhart@cov.com |
| | |
| | *Counsel for Defendant* |
| | *Uber Technologies, Inc.* |