UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R. RATTAGAN, <br> Plaintiff, <br> v. <br> UBER TECHNOLOGIES, INC., <br> Defendant. | Case No. 19-cv-01988-EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AND DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Docket Nos. 23, 27 |

Plaintiff Michael Rattagan is a lawyer based in Argentina. He asserts five causes of action—breach of fiduciary duty, deceit, fraud, intentional infliction of emotional distress, and negligence—stemming from allegations that Defendant Uber Technologies, Inc. retained him to provide legal support for the launch of new operations in Buenos Aires, proceeded without engaging his services, and subjected him to intense public backlash and ultimately criminal prosecution. Uber moves for sanctions against Rattagan, contending that his claims are based on a false factual premise. It also moves to dismiss the First Amended Complaint ("FAC").

## I. BACKGROUND

Plaintiff Michael Rattagan alleges that he was retained by Defendant Uber Technologies, Inc. to help it prepare to launch operations in Buenos Aires. Rattagan now sues Uber Technologies, alleging that Uber Technologies continued to present him as its legal representative in Argentina even though it ultimately launched its Buenos Aires operations without his help or knowledge, causing Rattagan to be personally exposed to public backlash and criminal prosecution for Uber Technologies' flouting of Argentine law. Rattagan asserts five causes of action: (1) breach of fiduciary duty, (2) deceit, (3) fraud, (4) intentional infliction of emotional distress, and (5) negligence.

In his original complaint, Rattagan named three Uber entities as defendants: the U.S.-based Uber Technologies, Inc. as well as Uber International, BV ("UIBV") and Uber International Holdings, BV ("UIHBV"), companies formed under the laws of the Netherlands with their principal place of business in Amsterdam. Docket No. 1 ¶ 5. (UIBV and UIHBV are hereinafter collectively referred to as the "Uber International Entities.") He alleged that "[Uber Technologies] controls UIBV and UIHBV, and [Uber Technologies] directed and authorized all of UIBV's and UIHBV's operational decisions . . . from Uber [Technologies'] San Francisco headquarters." *Id.* The complaint explained that Rattagan was hired as the "legal representative of certain Uber subsidiaries in [Argentina]," *id.* ¶ 1, apparently referring to the Uber International Entities which became foreign shareholders ("Shareholders") of the Argentinian Subsidiary, Docket No. 1 ¶¶ 14–15. However, the remainder of the allegations in that complaint were directed simply at "Uber" generally, without differentiation between the three entities.

Shortly after Rattagan initiated this suit, the three Uber entities notified his counsel of their belief that that the complaint contained a "fatal jurisdictional defect," namely that "[d]iversity jurisdiction does not encompass a foreign plaintiff, such as Mr. Rattagan, suing foreign defendants," such as the Uber International Entities. Sanctions Mot. at 2; *see* Docket No. 27-1 ¶ 8. Rattagan thereafter filed the FAC, removing the Uber International Entities as defendants and redefining "Uber" to mean only Uber Technologies. FAC at 1. Otherwise, the FAC was largely unchanged from the original complaint with one exception – Mr.Rattagan had removed the part of the original complaint that explained "Uber International, BV ('UIBV') is a company formed under the laws of the Netherlands with its principal place of business in Amsterdam. Uber International Holdings, BV ('UIHBV') is a company formed under the laws of the Netherlands with its principal place of business in Amsterdam. On information and belief, UTI controls UIBV and UIHBV, and UTI directed and authorized all of UIBV's and UIHBV's operational decisions relevant hereto from Uber's San Francisco headquarters." Docket No. 1, ¶ 5; Docket No. 15, ¶ 5. The import of the amendment was that all of the allegations previously directed at the three Uber entities collectively were now asserted solely against Uber Technologies.

Uber Technologies attacks Rattagan's FAC in two ways. First, it moves for sanctions

against Rattagan, contending that his claims are based on a factual premise—that there was an attorney-client and contractual relationship between Rattagan and Uber Technologies—that is false, because it was Uber's international subsidiaries that retained and contracted with Rattagan. *See* Docket No. 27 ("Sanctions Mot."). It alleges that his claims in the FAC—that he had a contractual relationship with Uber Technologies—are "demonstrably untrue." Sanctions Mot. at 2. Second, Uber Technologies moves to dismiss the FAC under Rule 12(b)(6), arguing that even taking Rattagan's allegations as true, they fail to state a claim. *See* Docket No. 23 ("MTD").

## II. MOTION FOR SANCTIONS

Uber contends the FAC is predicated upon "on factual contentions that [he] and his counsel know to be untrue." Sanctions Mot. at 1. Uber believes that the FAC contains "at least two allegations that Mr. Rattagan knows to be untrue: (1) that Uber Technologies 'and Mr. Rattagan agreed that Mr. Rattagan would' serve as the 'legal representative' for a new Argentine entity . . . ; and (2) the existence of an attorney-client relationship between Mr. Rattagan and Uber Technologies." *Id.* at 4. Uber contends that all of Mr. Rattagan's claims are predicated on these false factual allegations. Uber therefore seeks an order from this Court dismissing the Amended Complaint and awarding Uber the fees it incurred in connection with the sanctions motion and the motion to dismiss. *Id.* at 1.

A. Legal Standard

Federal Rule of Civil Procedure 11 states that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party [is] certif[ying] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Where Rule 11 is violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The moving party bears the burden to demonstrate that sanctions are justified. *See Tom Growney Equip., Inc. v. Shelly Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987).

Where a Rule 11 motion is directed at a complaint, the court must determine that: (1) the complaint is legally or factually baseless from an objective perspective, and (2) the attorney has not conducted a reasonable and competent inquiry before signing and filing it. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11. *See United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1117–18 (9th Cir. 2001). However, the existence of a non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions. *Holgate*, 425 F.3d at 677.

Rule 11 also contemplates a safe harbor provision that requires that parties filing for Rule 11 sanctions "give the opposing party 21 days first to withdraw or otherwise correct the offending paper." *Holgate*, 425 F.3d at 678 (internal quotations omitted). This ensures that "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." *Id.* Here, Uber filed the motion for sanctions on July 2, 2019, at which point the safe harbor period commenced. *See id.*; Docket No. 27. Rattagan filed an opposition brief two weeks later on July 16, 2019. *See* Docket No. 30. Far from withdrawing or otherwise correcting the FAC, Rattagan continued to assert that "Uber [Technologies] appointed Mr. Rattagan to be its legal representative in connection with Uber's expansion into Argentina" and to marshal evidence in support of that claim. Docket No. 30 at 3. Furthermore, at no other point before (or after) July 23, 2019 (21 days after the motion for sanctions was filed) did Rattagan withdraw his FAC or take other curative steps.

### III.   ANALYSIS

A.   Rattagan's Allegations

The FAC alleges that "Uber [Technologies] named Mr. Rattagan as its official legal representative in [Argentina]." FAC ¶ 2. It also alleges that Uber Technologies took specific actions to engage Rattagan's services in Argentina. *See, e.g.*, *id.* ¶ 13 ("Uber [Technologies] enlisted Mr. Rattagan to assist in the creation of an Argentine subsidiary . . . ."), ¶ 15 ("Uber [Technologies] and Mr. Rattagan agreed that Mr. Rattagan would act as the Shareholders' legal representative in Argentina.").

Based on these allegations, the FAC explicitly asserts that Uber Technologies had a direct attorney-client and contractual relationship with Rattagan. *See* FAC ¶¶ 80, 87 ("Uber [Technologies] was obligated to disclose the concealed facts due to its attorney/client and contractual relationship with Mr. Rattagan . . . ."); *id.* ¶ 100 ("Uber [Technologies] owed a duty of care to Mr. Rattagan based on . . . their attorney/client and contractual relationship . . . ."). The assertion of such a direct relationship – rather than an indirect relationship through Uber Technologies' control over the Uber International Entities – is corroborated by the deletion of the allegation in the original complaint. "On information and belief, UTI controls UIBV and UIHBV, and UTI directed and authorized all of UIBV's and UIHBV's operational decisions relevant hereto from Uber's San Francisco headquarters." Docket No. 1, ¶ 5; Docket No. 15, ¶ 5.

B. <u>Uber Technologies' Evidence</u>

Uber asserts that Rattagan knew the above allegations to be false. Sanctions Mot. at 5–6. Uber submits several exhibits to substantiate its contention that Rattagan knew from the beginning that it was the Uber International Entities, not Uber Technologies, that engaged him in preparation for the Argentina launch:

- A legal document from May 2013 showing that Rattagan registered with the Argentine government as legal representative for "Uber International Holding B.V." Docket No. 27-1 ("Shin Decl."), Exh. E.

- Invoices that Rattagan addressed to "Uber International Holding BV" for his services. *Id.*, Exh. F.

- An April 2016 email from Rattagan to Enrique Gonzalez in which Rattagan clarified, "For the record, we were not hired by [Uber Technologies employee] Ryan Black but by Liesbeth ten Brink, Director Legal – Europe, Uber International B.V." *Id.*, Exh. D.

- A March 2013 email from Rattagan to Liesbeth ten Brink stating, "We are glad to hear about Uber International B.V.'s expansion plans in to Argentina. We will be delighted to provide you and your company with all the necessary support." *Id.*, Exh. B at 1. His email further states, "I look forward to working with you in Uber International's South American expansion." *Id.* at 2.

5

- A legal memorandum from Rattagan addressed to Liesbeth ten Brink at "Uber International B.V." *Id.*, Exh. C.

## C. Rattagan's Response

In his opposition brief, Rattagan doubles down on the FAC's allegations. He continues to insist that "Uber [Technologies] appointed Mr. Rattagan to be its legal representative in connection with Uber's expansion into Argentina." Docket No. 30 ("Sanctions Opp.") at 3. He marshals several pieces of evidence purporting to support his claims.

First, Rattagan relies on two news articles to assert that "[i]t is common knowledge that Uber [Technologies] directs expansion into new markets" and that "Uber [Technologies] directs its foreign subsidiaries – such as the Uber International Entities – to facilitate its expansion abroad." *Id.* at 3–4. However, neither article provides direct support for Rattagan's allegation that Uber Technologies had a direct legal relationship with him; they merely discuss the corporate relationship between Uber Technologies and its international subsidiaries. While the article may bolster his prior allegation that Uber controlled the Uber International Entities and directed their operations, he deleted that allegation in the FAC.

Second, Rattagan claims that his allegations are substantiated by the fact that when the "fallout from the launch came to fruition," it was Salle Yoo, Uber Technologies' Chief Legal Officer, and Todd Hamblet, Uber Technologies' Managing Counsel, who "handle[d] Mr. Rattagan's situation." Sanctions Opp. at 4 (citing FAC ¶¶ 46–47). According to Rattagan, "[i]t is the conduct of Uber, as directed by these individuals, that forms the basis of much of Mr. Rattagan's complaint." *Id.* Rattagan's claims in this action primarily arise from Uber Technologies' alleged conduct leading up to and immediately following the Buenos Aires launch. By Rattagan's own account, Yoo and Hamblet did not become involved until May 26, 2016, after *Rattagan* "s[ought] [their] direct involvement" by "reach[ing] out" to them. FAC ¶ 46. Rattagan's interactions with Yoo and Hamblet after the launch do not prove a direct attorney-client relationship between Uber Technologies and Mr. Rattagan, especially prior to the Argentina launch. Indeed, Hamblet's declaration "to support Mr. Rattagan in his criminal defense," Sanctions Opp. at 5, states that Hamblet's "responsibilities include managing the corporate

governance for Uber Technologies, Inc. and its related entities, including Uber B.V., a Dutch entity." Docket No. 30-1 ("Rosenfeld Decl."), Exh. B ¶ 1. Mr. Hamblet makes clear that "Rattagan and his firm did [work] for *Uber International B.V. and Uber International Holding B.V.*," and that "Rattagan was appointed solely and exclusively to act as the legal representative of the *two foreign entities*." *Id.* ¶¶ 3, 5 (emphases added).

Third, Rattagan submits emails of "pre-litigation discussions" between the parties, in which Uber Technologies' Senior Litigation Counsel "demand[ed] that Mr. Rattagan delete from any complaint he may file any reference to, or information derived from, communications with Uber personnel (including any of Uber's in-house lawyers), legal conclusions, and references to purported unlawful or illegal conduct, all of which violate his duty of loyalty.'" Sanctions Mot. at 4–5 (quoting Rosenfeld Decl., Exh. C at 2). Rattagan contends that Uber Technologies' references to a "duty of loyalty" and "attorney client privilege" in this email concede the existence of an attorney-client relationship. Rosenfeld Decl., Exh. C at 1–2. It is true that there is some ambiguity in this email as to which Uber entities are in an attorney-client relationship with Rattagan, because the email throughout refers to the Uber International Entities and Uber Technologies collectively as "Uber." *Id.* at 1. But the email's second sentence clarifies that:

> As Mr. Rattagan well knows, Uber International Holdings, BV and Uber International, BV (these entities and Uber Technologies, Inc. are referred to herein as "Uber") retained him and his law firm to provide legal advice in connection with the registration of an entity in Argentina. As an attorney, he owes the duty of utmost loyalty, and cannot put his interests before his clients'.

*Id.* at 1. This sentence indicates that it was "Uber International Holdings, BV and Uber International, BV," as distinguished from "Uber Technologies, Inc.," that "retained [Rattagan] and his law firm to provide legal advice." *Id.* It is also notable that Rattagan himself clarified any ambiguity on this point in his April 2016 email to Enrique Gonzalez: "For the record, we were not hired by [Uber Technologies employee] Ryan Black but by Liesbeth ten Brink, Director Legal – Europe, *Uber International B.V.*" Shin Decl., Exh. D (emphasis added).

The bottom line is that Rattagan has produced no evidence to substantiate his allegations of a direct "attorney/client and contractual relationship" with Uber Technologies. Instead, the

7

evidence introduced by Uber Technologies shows that the direct legal relationship that existed was between the Uber International Entities and Rattagan, and further that Rattagan was fully aware of this fact, as demonstrated by his communications and billing invoices. *See* Shin Decl., Exhs. B–E.

D. Summary

On this record, the Court concludes that Rattagan presented the Court with a complaint that was inaccurate and misleading. While Mr. Rattagan could have advanced a theory that Uber Technologies was somehow legally responsible based on its indirect control over Uber International Entities with whom Mr. Rattagan contracted (whether via an alter ego or other theory), Mr. Rattagan deleted that allegation and worded the FAC so as to imply a direct relationship with Uber Technologies. As a result, Uber Technologies has met its burden of showing that Rattagan's "complaint is . . . factually baseless from an objective perspective." *Holgate*, 425 F.3d at 676; *see also Song FI, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 4180214, at *3 (N.D. Cal. Aug. 8, 2016) (holding that allegations in complaint were "objectively baseless" where "[p]laintiffs present no evidence to support" them). Further, the record suggests that Rattagan's counsel did not "conduct[] a reasonable and competent inquiry before signing and filing [the FAC]." *Holgate*, 425 F.3d at 676. Rattagan's lawyers had access to all the evidence submitted in connection with this motion, and they should have been aware that the evidence did not support Rattagan's claims of a contractual relationship with Uber Technologies. Rattagan's counsel thus violated its duty under Rule 11(b)(3) to ensure that Rattagan's "factual contentions have evidentiary support . . . to the best of the [their] knowledge, information, and belief." Accordingly, the Court **GRANTS** Uber Technologies' Motion for Sanctions and will "impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1).

E. Remedy

A sanction under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Examples of nonmonetary sanctions include "striking the offending paper; issuing an admonition, reprimand, or censure; requiring

participation in seminars or other educational programs; . . . [and] referring the matter to disciplinary authorities." Fed. R. Civ. P. 11, Advisory Committee Notes (1993).

Uber Technologies asks the Court for an order dismissing the FAC and awarding the fees Uber Technologies incurred in preparing the motion for sanctions and motion to dismiss. Because false factual premises underpin the FAC as it is currently framed, the Court **DISMISSES** the FAC in its entirety. *See Hunt v. Sunny Delight Beverages Co.*, No. 818CV00557JLSDFM, 2018 WL 6786265, at *4 (C.D. Cal. Dec. 18, 2018) ("Striking the entire First Amended Complaint is appropriate because Plaintiffs' sanctionable misrepresentations taint the entire pleading."); *see also* Fed. R. Civ. P. 11, Advisory Committee Notes (1993) (one factor to consider is "whether [the improper conduct] infected the entire pleading"). However, Rattagan is given leave to amend, because the Court cannot rule out the possibility that one or more legal claims may be properly stated against Uber Technologies, even if Uber did not have a formal contractual relationship with Mr. Rattagan. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("Even if a district court indicated that a complaint was not legally tenable or factually well founded for Rule 11 purposes, the resulting Rule 11 sanction would nevertheless not preclude the refiling of a complaint.").

As for monetary sanctions, Rule 11 instructs that an award of "reasonable attorney's fees and other expenses directly resulting from the violation" is permissible where "warranted for effective deterrence." Fed. R. Civ. P. 11(c). In this case, Uber Technologies notified Rattagan on three occasions prior to filing the motion for sanctions that Rattagan's key allegations lacked a factual basis. *See* Shin Decl. ¶ 8. Undeterred, Rattagan persisted in pressing his claims without attempting to allege accurate facts and reframe his legal claims. As a result, the parties and the Court have had to suffer a needless round of motion work. Monetary sanctions may be assessed where "Plaintiffs' counsel continued to make . . . factual assertions even when confronted with evidence presented by Defendants that their assertions were wrong." *Brown v. Royal Power Mgmt., Inc.*, No. C-11-4822 EMC, 2012 WL 298315, at *3 (N.D. Cal. Feb. 1, 2012).

Although, Uber Technologies requested an award that would cover the work its attorneys completed in preparing both the Motion for Sanctions and the Motion to Dismiss (for a total of $86,415), the Court finds it reasonable to order an award for the fees Uber Technologies incurred in connection with the sanctions briefing only.  The total amount of that award will be $28,731.50.  Counsel for Uber Technologies represents that the following table shows the fees associated with that work; it reflects the "two attorneys who worked on briefing and preparing the Motions," and "discounted rates for each of the two timekeepers."  *Id.* ¶ 4.

| Timekeeper | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Clara Shin | Partner | $895 | 13.7 | $12,261.50 |
| Lindsey Barnhart | Associate | $675 | 24.4 | $16,470.00 |
| | | Total | 38.1 | $28,731.50 |

Shin Decl. ¶¶ 5–6.

### IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS** Uber Technologies' motion for sanctions, **DISMISSES** the FAC with leave to amend, and **AWARDS** Uber Technologies fees in the amount of $28,731.50.  Because the complaint is dismissed pursuant to the granting of Rule 11 sanctions, the Court does not reach Defendant's motion to dismiss.  The amended complaint shall be filed within thirty (30) days from the date of this order.

This order disposes of Docket Nos. 23 and 27.

**IT IS SO ORDERED**.

Dated: August 19, 2019

_____
EDWARD M. CHEN
United States District Judge